1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10  FRANK RIVERA,                          ) 1:10-cv—00223-LJO-SMS-HC
                                          )
11              Petitioner,               ) FINDINGS AND RECOMMENDATIONS
                                          ) TO GRANT RESPONDENT'S MOTION TO
12                                        ) DISMISS PETITIONER'S FIRST,
        v.                                ) SECOND, THIRD, AND FIFTH CLAIMS
13                                        ) WITHOUT LEAVE TO AMEND  (Docs. 1,
   JAMES D. HARTLEY, Warden,              ) 48)
14                                        )
                Respondent.               ) FINDINGS AND RECOMMENDATIONS TO
15                                        ) DENY PETITIONER'S FOURTH, SIXTH,
   _____) AND EQUAL PROTECTION CLAIMS (Doc.
16                                           1)

17                                        FINDINGS AND RECOMMENDATIONS TO
                                          DIRECT THE ENTRY OF JUDGMENT FOR
18                                        RESPONDENT and TO DECLINE TO
                                          ISSUE A CERTIFICATE OF
19                                        APPEALABILITY (Docs. 1, 48)

20                                        **OBJECTIONS DEADLINE:**
                                          **THIRTY (30) DAYS**
21

22      Petitioner is a state prisoner proceeding pro se with a

23  petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254

24  that was transferred to this Court from the United States

25  District Court for the Central District of California on February

26  11, 2010.  The matter has been referred to the Magistrate Judge

27  pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.

28  Pending before the Court is the petition filed on July 7, 2009,

and Respondent's motion to dismiss the petition filed on February 2, 2011.  Respondent filed an answer to the petition on September 20, 2010, and Petitioner filed a traverse on November 18, 2010. No opposition was filed to the motion to dismiss.

I.  <u>Proceeding pursuant to Respondent's Motion to Dismiss</u>

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).

Rule 4 of the Rules Governing Section 2254 Cases (Habeas Rules) allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...."

The Ninth Circuit has allowed respondents to file motions to dismiss pursuant to Rule 4 instead of answers if the motion to dismiss attacks the pleadings by claiming that the petitioner has failed to exhaust state remedies or has violated the state's procedural rules.  <u>See</u>, <u>e.g.</u>, <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss

2

1  a petition for failure to exhaust state remedies); White v.
2  Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to
3  review a motion to dismiss for state procedural default); Hillery
4  v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same).
5  Thus, a respondent may file a motion to dismiss after the Court
6  orders the respondent to respond, and the Court should use Rule 4
7  standards to review a motion to dismiss filed before a formal
8  answer.  See, Hillery, 533 F. Supp. at 1194 & n.12.

9      In this case, after the answer was filed, the United States
10 Supreme Court decided Swarthout v. Cooke, 562 U.S. –, 131 S.Ct.
11 859 (2011), which appears to govern the petition in the case
12 before the Court.  Within a few days of the decision, Respondent
13 filed a motion to dismiss the petition because the petition does
14 not state a claim cognizable in a proceeding pursuant to 28
15 U.S.C. § 2254.

16     The material facts pertinent to the motion are to be found
17 in copies of the official records of state parole and judicial
18 proceedings which have been provided by the parties, and as to
19 which there is no factual dispute.  Because Respondent's motion
20 to dismiss is similar in procedural standing to motions to
21 dismiss on procedural grounds, the Court will review Respondent's
22 motion to dismiss pursuant to its authority under Rule 4.

23     II.  Background

24     Petitioner is an inmate of Avenal State Prison who is
25 serving a sentence of fifteen years to life plus five years
26 imposed by the Los Angeles County Superior Court in June 1989
27 upon Petitioner's conviction for second degree murder with an
28 enhancement for a serious prior felony conviction in violation of

3

Cal. Pen. Code §§ 187 and 667.  (Pet. 2.)

Petitioner challenges the decision of California's Board of Parole Hearings (BPH) made after a hearing held on March 1, 2006, finding Petitioner unsuitable for release on parole, which was upheld in the state courts.  (Pet. 7.)  Petitioner raises the following claims in the petition:  1)  Petitioner's right to due process of law was violated by the BPH's decision that he was unsuitable for parole because the decision was not supported by some evidence that Petitioner would present a continuing, unreasonable risk of danger to society if released because the evidence (the commitment offense, a record of satisfactory programming in prison, a psychological evaluation, and an outdated criminal history) was not relevant and reliable (pet. 6-10); 2) Petitioner's commitment offense and criminal history were insufficient to support the BPH's decision, which was not supported by any reliable and relevant evidence that Petitioner would pose an unreasonable danger to public safety if released (pet. 10-15); 3) Petitioner's due process and equal protection rights were violated by the BPH's incorrect application of the "some evidence" standard because Petitioner's commitment offense was insufficient to support the decision (pet. 17-19); 4) the BPH violated the Establishment Clause of the First Amendment by relying on Petitioner's lack of participation in "Alcohol Anonymous" or "Narcotic Anonymous" programs as a basis for concluding that Petitioner would pose an unreasonable danger to public safety if released (pet. 20, 20-21); 5) Petitioner's right to due process of law and equal protection of the laws was violated by the BPH's reliance on the nature of his offense in

light of a psychological report and Petitioner's good behavior in prison (pet. 22-25); and 6) continued denials of parole resulting in twenty-two years of prison time have nullified the plea agreement entered into by Petitioner when he pled guilty to second degree murder (pet. 26-28).

In connection with the answer, Respondent submitted a transcript of the BPH hearing held on March 1, 2006.  (Ex. 1, 72-147.)  Review of the transcript reflects that Petitioner attended the hearing with counsel, who advocated on Petitioner's behalf. (Id. at 72-75, 79-80, 135-37.)  Petitioner had an opportunity to review the pertinent records before the hearing (id. at 80), speak to the BPH regarding numerous suitability factors (id. at 80-131), and make a statement personally to the board (id. at 137).  Petitioner was present when the BPH stated its reasons for finding Petitioner unsuitable for parole, which included the commitment offense, Petitioner's history of prior convictions, and Petitioner's failure to participate in beneficial self-help and therapy programming, which the board concluded made Petitioner's progress unpredictable.  Petitioner was commended for having prepared a document concerning his experience and views of Alcoholics Anonymous.  (Id. at 139-46.)

III.  <u>Failure to State a Cognizable Due Process Claim</u>

The Supreme Court has characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment Due Process Clause, which in turn requires fair procedures with respect to the liberty interest. <u>Swarthout v. Cooke</u>, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

However, the procedures required for a parole determination are the minimal requirements set forth in <u>Greenholtz v. Inmates of Neb. Penal and Correctional Complex</u>, 442 U.S. 1, 12 (1979).[1] <u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 862.  In <u>Swarthout</u>, the Court rejected inmates' claims that they were denied a liberty interest because there was an absence of "some evidence" to support the decision to deny parole.  The Court stated:

> There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners.  (Citation omitted.) When however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication–and federal courts will review the application of those constitutionally required procedures. In the context of parole, we have held that the procedures required are minimal.  In <u>Greenholtz</u>, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. (Citation omitted.)

<u>Swarthout</u>, 131 S.Ct. 859, 862.  The Court concluded that the petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified

---

[1] In <u>Greenholtz</u>, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made. <u>Id.</u> at 16.  The decision maker is not required to state the evidence relied upon in coming to the decision. <u>Id.</u> at 15-16.  The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty interest of a parolee. <u>Id.</u> at 9.  Further, the discretionary decision to release one on parole does not involve restrospective factual determinations, as in disciplinary proceedings in prison; instead, it is generally more discretionary and predictive, and thus procedures designed to elicit specific facts are unnecessary. <u>Id.</u> at 13.  In <u>Greenholtz</u>, the Court held that due process was satisfied where the inmate received a statement of reasons for the decision and had an effective opportunity to insure that the records being considered were his records, and to present any special considerations demonstrating why he was an appropriate candidate for parole. <u>Id.</u> at 15.

> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of the federal habeas courts' inquiry into whether [the petitioners] received due process.

Swarthout, 131 S.Ct. at 862.  The Court in Swarthout expressly noted that California's "some evidence" rule is not a substantive federal requirement, and correct application of California's "some evidence" standard is not required by the Federal Due Process Clause.  Id. at 862-63.

Here, Petitioner challenges the application of California's "some evidence" standard in his first, second, third, and fifth claims, all of which are predicated on the insufficiency of the evidence to support the conclusion that Petitioner was not suitable for parole.  In these claims, Petitioner asks this Court to engage in the very type of analysis foreclosed by Swarthout.  Petitioner does not state facts that point to a real possibility of constitutional error or that otherwise would entitle Petitioner to habeas relief because California's "some evidence" requirement is not a substantive federal requirement.  Review of the record for "some evidence" to support the denial of parole is not within the scope of this Court's habeas review under 28 U.S.C. § 2254.

Petitioner cites state law concerning the appropriate weight to be given to evidence.  To the extent that Petitioner's claim or claims rest on state law, they are not cognizable on federal habeas corpus.  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68

7

1   (1991).  Alleged errors in the application of state law are not

2   cognizable in federal habeas corpus.  <u>Souch v. Schiavo</u>, 289 F.3d

3   616, 623 (9th Cir. 2002).

4        A petition for habeas corpus should not be dismissed without

5   leave to amend unless it appears that no tenable claim for relief

6   can be pleaded were such leave granted.  <u>Jarvis v. Nelson</u>, 440

7   F.2d 13, 14 (9th Cir. 1971).

8        Here, it is clear from the allegations in the petition that

9   Petitioner attended the parole suitability hearing, made

10  statements to the BPH, and received a statement of reasons for

11  the decisions of the BPH.  Thus, the undisputed facts of record

12  establish that Petitioner had an opportunity to be heard and

13  received a statement of reasons for the decisions in question.

14  It therefore does not appear that Petitioner could state a

15  tenable due process claim.

16       Accordingly, it will be recommended that with respect to

17  Petitioner's first, second, third, and fifth due process claims,

18  Respondent's motion to dismiss the petition be granted and that

19  the petition be dismissed without leave to amend.

20       IV.  <u>Nullification of the Plea Agreement</u>

21       In his sixth claim, Petitioner argues that continued denials

22  of parole have resulted in service of twenty-two (22) years of

23  prison time, which has effectively nullified Petitioner's plea

24  agreement.  Petitioner alleges that his court-appointed counsel

25  advised him that if he pleaded guilty to second degree murder, he

26  would serve ten (10) to twelve (12) years in prison and be

27  released.  (Pet. 26.)  Further, at the time of the plea, the

28  judge informed Petitioner that the years would not in any way

8

1   total over twenty years.  (Id.)  Petitioner was sentenced to

2   fifteen (15) years to life plus five (5) years.  (Id.)  He

3   alleges that parole was to be possible after a minimum prison

4   term of ten to twelve years.  (Pet. 27.)

5       Petitioner appears to argue that the statutory scheme

6   concerning parole presumes that parole would be granted and that

7   he would be released before passage of the minimum prison time

8   that one convicted of the greater crime of first degree murder

9   would serve; thus, his plea agreement has been nullified.  He

10  also asserts that his plea agreement was a contract that binds

11  the executive branch to the terms of the plea agreement.  (Pet.

12  27.)  Petitioner asserts that it was never intended that the BPH

13  could "nullify" the terms of the plea agreement by abusing its

14  parole powers.  (Pet. 28.)

15      A.  Background

16      The record contains a transcript of plea negotiations

17  reported in the Los Angeles Superior Court on March 30, 1988.

18  (Ans. Ex. 5, 622-31.)  Petitioner sought to plead guilty to

19  manslaughter, but the prosecution discussed having made an offer

20  of twenty-three (23) years for a plea to second degree murder,

21  plus the knife, a prior robbery ("211"), a prior burglary

22  ("459"), and a prior aggravated assault ("245").[2]  (Ex. 5, 623.)

23  Petitioner had rejected the offer.  (Id.)  The parties discussed

24  "years," with Petitioner seeking seventeen (17), and the

25  prosecutor seeking twenty (20).  (Id. at 624-26.)  The Court

26  advised Petitioner that the charges of first degree murder with

27

28
        [2] The numbers refer to corresponding sections of the California Penal Code.

9

enhancements and prior convictions could result in a sentence of thirty-four (34) years to life. (Id. at 626-27.)

Negotiations continued, with the People seeking a plea to second degree murder with the possibility of up to twenty-three (23) years, and Petitioner's counsel expressing interest in nineteen (19) years. (Id. at 627-28.) The People reaffirmed that they wanted second degree murder, with the knife and the three prior offense allegations, but with the possibility of the court's striking the knife and two one-year priors. (Id. at 630.) Petitioner's counsel stated that Petitioner would not go along with that bargain. (Id. at 631.)

The transcript of continued proceedings in the trial court held on August 11, 1988, reflects that Petitioner was no longer represented by counsel because he had opted to represent himself. (Ex. 3, 632-34, 638.) There was discussion of an agreement for a guilty plea to second degree murder, with a court trial on the allegations concerning weapon use and prior convictions. (Id. at 634.) The Court instructed Petitioner that the prosecutor would inform Petitioner of his rights concerning the plea. (Id. at 635.) The following colloquy then ensued:

> MS. SCOTT [PROSECUTOR]: BEFORE I TAKE THE PLEA, A COUPLE OF TIMES WE USED EXPRESSIONS LIKE, THE MAXIMUM THAT COULD HAPPEN, OR A LID.
>
> AND I WANTED TO MAKE SURE THAT IT WAS CLEAR THAT WE AREN'T IN A POSITION TO DO THAT.
>
> WE CAN ONLY DO IT ACCORDING TO CODE, WHICH WOULD BE FIFTEEN TO LIFE, PLUS PRIORS. THAT'S THE WAY WE HAVE TO STATE IT. SO WE CAN'T SET A MAXIMUM.
>
> MY UNDERSTANDING IS THAT IS SET BY THE BOARD

1    OF PRISON TERMS.[3]

2         IS THAT CORRECT?

3    THE COURT: YES.  AS FAR AS THE SENTENCE FROM ME
     THOUGH–
4
     MS. SCOTT:  I UNDERSTAND.  BUT I WANTED TO MAKE
5    SURE THAT MR. RIVERA UNDERSTOOD.

6    THE COURT:  WHEN I SAY THE SENTENCE, THE YEARS WILL
     NOT IN ANY WAY TOTAL OVER 20 YEARS.
7         IN OTHER WORDS, THAT'S MY LID.  NO MATTER WHAT
     HAPPENS WITH THE PRIORS.
8
     MS. SCOTT:  EXCEPT THAT BEYOND THAT THE BOARD OF PRISON
9    TERMS DETERMINES.

10   THE COURT:  YOU MEAN ON THE INDETERMINATE SENTENCE?

11   MS. SCOTT:  YES.

12   THE COURT:  YES.  YOU'RE SAYING ON FIFTEEN TO LIFE,
     THEY DETERMINE.
13
     MS. SCOTT:  YES.
14
          IS THAT CLEAR TO YOU, MR. RIVERA?
15
     THE DEFENDANT:  SURE.  YES.
16
17   (Ex. 5, 635-36.)

18        Thereafter, Petitioner entered a plea to second degree

19   murder, admitted using a knife pursuant to Cal. Pen. Code §

20   12022(b), and thus admitted having committed a serious felony

21   within the meaning of Cal. Pen. Code § 1192.7(c)(23).  (Id. at

22   640.)  Petitioner waived his right to a jury trial on the

23   allegations concerning the prior convictions.  (Id. at 635.)  The

24   People dropped allegations concerning special circumstances.

25   (Id.)

26
     _____
27        [3] The Board of Prison Terms was renamed the Board of Parole Hearings
     effective July 1, 2005.  See, In re Olson, 149 Cal.App.4th 790, 793 n.1 (2007)
28   (citing Cal. Stats. 2005, ch. 10, §§ 6, 29, 46, 47, pp. 1-21, eff. May 10,
     2005, operative July 1, 2005).

Petitioner was sentenced on June 19, 1989, to fifteen years to life, plus five years for the prior conviction, for a total of twenty years to life. (Ex. 3, 406.)

After the denial of Petitioner's parole in 2006, Petitioner filed habeas petitions in the Los Angeles Superior Court (Ans., Ex. 1), the California Court of Appeal (Ans., Ex. 3), and the California Supreme Court (Ans., Ex. 5). The Superior Court denied the petition on the grounds that some evidence supported the denial of parole. (Ans., Ex. 2.) The Superior Court discussed various suitability factors that were supported by the evidence, but it found "[p]articularly troubling" the fact that Petitioner had refused to participate in AA, NA, or any other substance abuse self-help programming. (Id. at 216.) The higher state courts summarily denied the petitions for writ of habeas corpus. (Ans., Exs. 4, 6.)[4]

---

[4] Respondent asserts in the answer that the petition filed in this Court is untimely because the habeas petition filed in the California Supreme Court on November 5, 2008, was filed more than a year after the Court of Appeal denied a habeas petition on September 26, 2007. (Ans. 1-2.)

The Court notes that before the case was transferred to this Court, and without input from Respondent, the Central District considered materials submitted by Petitioner and concluded in a minute order concerning initial screening of the petition that Petitioner was entitled to an extended period of statutory tolling from the time his first habeas petition was constructively filed in the Superior Court on November 26, 2006, until the California Supreme Court denied Petitioner's petition on May 13, 2009, based in part on the loss of Petitioner's Supreme Court habeas petition in the mail or the misplacing of the petition by the California Supreme Court's clerk's office in October 2007. (Doc. 9.) The Central District concluded that the limitations period was extended from June 29, 2007, to December 14, 2009, rendering Petitioner's constructive filing of his pending petition on June 29, 2009, timely. Respondent contends that Petitioner's delay until September 10, 2008, in checking on the pendency of the California Supreme Court petition was insufficient to entitle Petitioner to equitable tolling, and thus the petition is untimely.

"The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs." Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir. 1990) . Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. See id. A trial judge's decision to apply the doctrine is thus reviewed for an abuse of discretion. See Milgard Tempering, 902 F.2d at 715; United States v. Lummi Indian Tribe,

B.  Legal Standards

1.  Habeas Corpus Review

Title 28 U.S.C. § 2254 provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption or correctness by clear and convincing evidence.

The petitioner bears the burden of establishing that the decision of the state court was contrary to, or involved an unreasonable application of, the precedents of the United States Supreme Court.  Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004); Baylor v.Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).

A state court's decision contravenes clearly established

235 F.3d 443, 452 (9th Cir. 2000).  A court abuses its discretion in applying the law of the case doctrine only if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. United States v. Lummi Indian Tribe, 235 F.3d at 452-53 (citing United States v. Cuddy, 147 F.3d 1111, 1114 (9th Cir. 1998)).

Respondent has not provided the Court with sufficient briefing, record, or analysis to demonstrate that the doctrine should not be applied in this proceeding.  The Court exercises its discretion to apply the doctrine to this proceeding.  The Court thus proceeds to consider the merits of the petition, which were addressed in the answer and related briefing.

Supreme Court precedent if it reaches a legal conclusion opposite
to the Supreme Court's or concludes differently on an
indistinguishable set of facts.  Williams v. Taylor, 529 U.S.
362, 405-06 (2000).  The state court need not have cited Supreme
Court precedent or have been aware of it, "so long as neither the
reasoning nor the result of the state-court decision contradicts
[it]."  Early v. Packer, 537 U.S. 3, 8 (2002).  The state court
unreasonably applies clearly established federal law if it either
1) correctly identifies the governing rule but then applies it to
a new set of facts in a way that is objectively unreasonable, or
2) extends or fails to extend a clearly established legal
principle to a new context in a way that is objectively
unreasonable.  Hernandez v. Small, 282 F.3d 1132, 1142 (9th
Cir.2002); see, Williams, 529 U.S. at 408-09.  An application of
law is unreasonable if it is objectively unreasonable; an
incorrect or inaccurate application of federal law is not
necessarily unreasonable.  Williams, 529 U.S. at 410.

2.   The Due Process Claim concerning the
Plea Agreement

A criminal defendant has a due process right to enforce the
terms of his plea agreement.  Promises from the prosecution in a
plea agreement must be fulfilled if they are significant
inducements to enter into a plea.  Santobello v. New York, 404
U.S. 257, 262 (1971); Buckley v. Terhune, 441 F.3d 688, 694 (9th
Cir. 2006).  Plea agreements are contractual in nature and are
measured by contract law standards.  United States v. De la
Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993).  In construing a plea
agreement, a court must determine what the defendant reasonably

14

1  believed to be the terms of the plea agreement at the time of the

2  plea.  United States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir.

3  2002).

4       The construction of a state court plea agreement is a matter

5  of state law, and federal courts will defer to a state court's

6  reasonable construction of a plea agreement.  Ricketts v.

7  Adamson, 483 U.S. 1, 6 n.3 (1987);  Buckley v. Terhune, 441 F.3d

8  688, 695 (9th Cir. 2006).  In California, a negotiated plea

9  agreement is a form of contract and is interpreted according to

10 general contract principles and according to the same rules as

11 other contracts.  Buckley v. Terhune, 441 F.3d 688, 695 (citing

12 People v. Shelton, 37 Cal.4th 759, 767 (2006) and People v.

13 Toscano, 124 Cal.App.4th 340, 344 (2004)).

14      In California, the plain meaning of an agreement's language

15 must first be considered.  If the language is ambiguous, it must

16 be interpreted by ascertaining the objectively reasonable

17 expectations of the promisee at the time the contract was made.

18 Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir. 2006).  If

19 ambiguity remains after a court considers the objective

20 manifestations of the parties' intent, then the language of the

21 contract should be interpreted most strongly against the party

22 who caused the uncertainty to exist, or in favor of the

23 defendant.  Id. at 695-96.

24      C.  Analysis

25      Here, the undisputed facts of record reflect that at the

26 time Petitioner entered his plea, there was specific discussion

27 and information concerning the "years" each party found

28 appropriate.  However, the court and the prosecutor clearly

distinguished the component of the sentence relating to the "years" from the indeterminate component of the sentence. Although the court did say that the "years" would not in any way total over twenty years, it was apparent in context that the court was referring to the stated number of years that would be served in connection with the indeterminate term, and that twenty years was the maximum number of years that could be imposed after the court trial on the allegations concerning the prior convictions.  It was equally clear that the sentence was indeterminate in the sense that the Board of Prison Terms would make the determination of the actual maximum time that Petitioner spent in prison pursuant to the open-ended sentence of fifteen years to life to be imposed for the murder.

This is consistent with California law, whereby it is established that an indeterminate life sentence is in legal effect a sentence for the maximum term of life.  People v. Dyer, 269 Cal.App.2d 209, 214 (1969).  Generally, a convicted person serving an indeterminate life term in state prison is not entitled to release on parole until he is found suitable for such release by the Board of Parole Hearings (previously, the Board of Prison Terms).  Cal. Pen. Code § 3041(b); Cal. Code of Regs., tit. 15, § 2402(a)).  Under California's Determinate Sentencing Law, an inmate such as Petitioner who is serving an indeterminate sentence for murder may serve up to life in prison, but he does not become eligible for parole consideration until the minimum term of confinement is served.  In re Dannenberg, 34 Cal.4th 1061, 1078 (2005).  As was the practice under California's previous indeterminate sentencing law, the actual confinement

1  period of a life prisoner is determined by an executive parole

2  agency.  Id. (citing Cal. Pen. Code § 3040).

3      The Court concludes that the record of the colloquy at the

4  time the plea was entered directly contradicts Petitioner's

5  generalized allegations concerning his understanding of the plea

6  agreement.  Given the clear explanation of the indeterminate

7  nature of the overall sentence and the parole authority's power

8  to determine the maximum time actually served before release on

9  parole, the clear terms of the agreement preclude the

10 interpretation urged by Petitioner.  However, if during some

11 point of negotiations there was any ambiguity, the objective

12 manifestations of the parties' intent at the time of the plea

13 likewise preclude the interpretation that Petitioner advances.

14     The state courts' rejection of Petitioner's claim was not

15 contrary to, or an unreasonable application of, clearly

16 established Supreme Court precedent, and it was not based on an

17 unreasonable determination of the facts.  See, 28 U.S.C. §

18 2254(d).  Petitioner has not shown that the state court failed to

19 apply clearly established precedent of the United States Supreme

20 Court.  Further, Petitioner has not shown that the state courts

21 unreasonably determined the facts in light of the evidence

22 presented in the state court proceedings.  The state courts could

23 reasonably have determined that Petitioner had shown nothing more

24 than that he bargained for a term of years, to be determined by a

25 court trial on the enhancement allegations but not to exceed five

26 years, plus fifteen years to life with only the "possibility" of

27 release on parole.  See, Ricketts v. Adamson, 483 U.S. 1, 6 n.3

28 (1987).

To the extent Petitioner relies on state regulations or statutes that permit discretionary release after a shorter period of time than Petitioner has been confined, Petitioner's claim is based on the application of state law and thus does not entitle Petitioner to relief.

In summary, it is concluded that with respect to his due process claim relating to his plea bargain, Petitioner has failed to show that the state court decisions 1) were contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Accordingly, it will be recommended that Petitioner's sixth due process claim relating to his plea bargain be denied.

V.   Violation of the Establishment Clause of the First Amendment

In his fourth claim, Petitioner alleges that the BPH violated his rights under the Establishment Clause of the First Amendment because it relied on Petitioner's lack of participation in Alcoholics Anonymous (AA) or Narcotics Anonymous (NA).  (Pet. 20-21.)  Petitioner asserts that the board insisted that he participate in those programs and relied on his failure to do so in finding Petitioner unsuitable for parole.

Respondent argues that there is no clearly established precedent from the United States Supreme Court governing Petitioner's claim as is required by 28 U.S.C. § 2254(d)(1) in order for Petitioner to be entitled to relief on the claim.

18

1  However, in <u>Inouye v. Kemna</u>, 504 F.3d 705 (9th Cir. 2007),
2  the court considered whether state parole authorities had
3  qualified immunity in a § 1983 suit by a plaintiff who alleged
4  that as a condition of parole, they required his attendance in
5  drug treatment programs (AA and NA) rooted in a regard for a
6  higher power.  In response to the argument of a defendant
7  supervisory parole officer that the law was not clearly
8  established at the time, the court held that the law "was and is
9  very clear, precluding qualified immunity...." <u>Inouye</u>, 504 F.3d
10  at 711-12.  The court found that there had been consistent
11  articulation of the principle that the government may not coerce
12  anyone to support or participate in religion or its exercise, or
13  punish anyone for not so participating.  <u>Id.</u> at 713 (citing
14  <u>Everson v. Board of Education of Ewing Township</u>, 330 U.S. 1
15  (1947) and <u>Lee v. Weisman</u>, 505 U.S. 577, 587 (1992)).  The court
16  further noted that the basic test for Establishment Clause
17  violations remains that stated in <u>Lemon v. Kurtzman</u>, 403 U.S.
18  602, 613 (1971), namely, that the government acts 1) not have a
19  secular legislative purpose, 2) not have a principal or primary
20  effect which either advances or inhibits religion, and 3) not
21  foster an excessive government entanglement with religion.  <u>Id.</u>
22  at 713 n.7.  The court concluded that recommending revocation of
23  parole for a parolee's failure to attend the programs after an
24  order to participate was given was unconstitutionally coercive.
25  <u>Id.</u> at 713-14.  In finding the law clear, the court in <u>Inouye</u>
26  relied not only on lower court decisions but also in part on the
27  decisions of the United States Supreme Court and the absence of
28  any Supreme Court case upholding government-mandated

1  participation in religious activity in any context. Id. at 715.

2       Further, in Turner v. Hickman, 342 F.Supp.2d 887 (E.D.Cal.

3  2004), a Christian inmate alleged that parole authorities

4  expressly conditioned the plaintiff's eligibility for release on

5  parole in part upon participation in NA. Id. at 890. This Court

6  concluded that by repeated application of the "coercion" test set

7  forth in Lee v. Weisman, 505 U.S. 577, 587 (1992), the Supreme

8  Court had made the law clear. Turner, 342 F.Supp.2d at 894. By

9  expressly telling the plaintiff he needed to participate in NA in

10 order to be eligible for parole, the state had acted coercively

11 to require participation in a program in which the evidence

12 showed that belief in "God" was a fundamental requirement of

13 participation. Id. at 895-96. Accordingly, the First Amendment

14 prohibited the requirement. Id. at 896-99.

15      However, even if the Court proceeds on an understanding that

16 there is clearly established federal law as determined by the

17 Supreme Court of the United States that prohibits punishing an

18 inmate for failing to participate in AA or NA, or coercing an

19 inmate to participate in NA or AA religious activities, it

20 nevertheless does not appear that Petitioner is entitled to

21 relief.

22      Review of the transcript of the parole hearing shows that in

23 1984 Petitioner had murdered a transient in the course of a

24 robbery in which Petitioner repeatedly stabbed the victim, who

25 Petitioner claimed owed him $200, and then calmly wiped the blood

26 off his knife and went through the victim's pockets; in fleeing

27 the scene, Petitioner assaulted a fireman who attempted to

28 apprehend Petitioner. Petitioner said he believed he was on

drugs and alcohol at the time of the offense, but he was not sure, and in any event, he never had discussed the circumstances of the commitment offense.  (Ex. 1, 81-83.)

Petitioner had a criminal history described as a lengthy list of priors, including convictions for assault and robbery. He served time in prison and jail, and he admitted that in the decades preceding his offense, he was an alcoholic who drank heavily because penalties for drunkenness were lighter than those for drug offenses.  (Id. at 84-87, 116-17.)  Petitioner used marijuana, bennies, red devils, yellow jackets, and heroin before he became an alcoholic.  (Id. at 115.)  Petitioner committed property offenses in order to get money for drugs.  (Id. at 89.) He attended alcoholic and Christian programs, but he relapsed. However, he tried methadone and did kick a heroin addiction; he attended NA and AA and functioned well under those programs. (Id. at 89-90.)

The BPH question Petitioner concerning his attendance in a "self-help 12 step program," and he submitted to the BPH a document entitled "Alcoholics Anonymous and Religion," in which he professed his Christian faith but stated that he looked not to the twelve-step programs for salvation, but rather to God.  (Id at 96-100.)  The board reviewed Petitioner's programming since the previous denial of parole in 2003, finding nothing with regard to "self-help" during the period despite the board's instruction in 2003 to participate in self-help, and his counselor's recommendation to do the same.  Petitioner stated that the only self-help group in the prison was AA or NA, which his document had addressed; he did attend chapel.  (Id. at 110-

14.)  He did not attend NA or AA because all he needed was the Bible; he had done AA numerous times while out of prison.  (<u>Id.</u> at 115-16.)

During the hearing there was discussion of a note in the psychological report that Petitioner had failed to follow the recommendation of the board to participate in NA/AA, despite having an ability to do so, and that his failure was "attitudinal, which does not bode well for him."  (<u>Id.</u> at 117.) Petitioner responded that he did not refuse, he had submitted his reasons, and that the Bible taught that one cannot follow two masters, which was what came to Petitioner's mind when he thought about AA.  (<u>Id.</u> at 117-18.)

A deputy commissioner clarified that the panel recommendation did not "speak to you having to attend AA or NA," but only recommended that he participate in self-help, "such as any substance abuse program that are (sic) available."  (<u>Id.</u> at 118.)  Petitioner agreed that it was not specifically saying that it had to be NA or AA; he was "just going there."  (<u>Id.</u> at 118, 123.)  When Petitioner said that reading the Bible was what he was doing, the presiding commissioner said that Petitioner had such a lengthy history of narcotic use, alcohol abuse, and illegal activities that Petitioner needed to do a lot more than just study the Bible or engage in self-study.  (<u>Id.</u> at 119, 125-26.)  One commissioner acknowledged at the hearing that it was not necessary that Petitioner do AA or NA, but rather that he participate in a substance abuse program, and that in fact legal decisions said the board could not make someone go to AA, and the board had "no problem with that."  (<u>Id.</u> at 123.)  A commissioner

pointed out that in addition to religion, there were other components of AA, such as anger management, and Petitioner agreed.  (Id. at 124.)

The Board's reasons for concluding that Petitioner would pose an unreasonable risk of danger to society or a threat to public safety if released included the cruel nature of the commitment offense against an unarmed transient, a lengthy record of assaultive and escalating criminal conduct, a lengthy history of narcotic and alcohol abuse, repeated failures to profit from society's previous attempts to correct his criminality, and his failure to upgrade and to participate in beneficial self-help and therapy programming, which was needed to face, discuss, understand, and cope with stress and conflict in a nondestructive or non-harmful manner and to adjust successfully outside of prison.  (Ex. 1, 139-46.)

Consideration of the entirety of the transcript of the proceedings before the BPH shows that the decision concerning parole suitability was not premised upon Petitioner's failure to participate in AA or NA, but rather his nonparticipation in any self-help programs concerning anger management or substance abuse.  Indeed, the board expressly indicated that it had no problem with failure to participate in particular programs that were substantially religion-based; rather, it was Petitioner's complete failure to take part in any self-help programs.

The Court concludes that Petitioner did not demonstrate that he was coerced to engage in NA or AA or was punished for not doing so.

In light of these facts, and considering Petitioner's

failure to engage in any self-help programs despite a lengthy history of criminal behavior and abuse of drugs and alcohol, a state court determination that Petitioner had not shown that he had suffered a violation of the Establishment Clause would not have constituted a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Further, such a decision would not have been based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Therefore, the Court concludes that Petitioner did not show entitlement to relief with respect to his claim of a violation of the Establishment Clause.  Accordingly, it will be recommended that Petitioner's fourth claim concerning the Establishment Clause be denied.

VI.   Equal Protection

In the petition, Petitioner refers in passing to a denial of equal protection of the law twice.  Respondent does not address these references.

The first reference occurs in Petitioner's third claim concerning the failure of the BPH correctly to apply the "some evidence" standard, which Petitioner asserts violated "fundamental [due] process and equal protection of the law." (Pet. 17.)

The second reference appears in the heading preceding Petitioner's fifth claim concerning application of the "some evidence" standard and the board's reliance on the commitment offense after the passage of a long period of time.  Petitioner

alleged:

> Even An Egregious Offense Cannot Interminably
> Deny Parole To An Otherwise Statutorily Suitable
> Inmate Without violating Due Process and Equal
> Protection Of The Law.

(Pet. 22.)   Petitioner does not allege additional facts that appear pertinent to an equal protection claim.

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race, religion, or membership in a protected class subject to restrictions and limitations necessitated by legitimate penological interests.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974); <u>Bell v. Wolfish</u>, 441 U.S. 520, 545-46 (1979).  The Equal Protection Clause essentially directs that all persons similarly situated should be treated alike.  <u>City of Cleburne, Texas v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985).  Violations of equal protection are shown when a respondent intentionally discriminates against a petitioner based on membership in a protected class, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir. 2001), or when a respondent intentionally treats a member of an identifiable class differently from other similarly situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).

Here, it is not clear that Petitioner intended to allege an equal protection claim.  However, if Petitioner did intend to make such a claim, then the Court concludes that Petitioner has not alleged or shown that membership in a protected class was the

basis of any alleged discrimination.  Petitioner has not shown that he was a member of an identifiable class who was treated differently from similarly situated persons.

Accordingly, it will be recommended that any equal protection claim be denied.

VII.  <u>Recommendation</u>

Accordingly, it is RECOMMENDED that:

1)  Respondent's motion to dismiss the first, second, third, and fifth due process claims in the petition without leave to amend for failure to state a cognizable claim be GRANTED; and

2)  Petitioner's fourth claim pursuant to the Establishment Clause of the First Amendment be DENIED; and

3)  Petitioner's sixth claim concerning a due process right to enforce his plea agreement be DENIED; and

3)  To the extent that Petitioner alleges a violation of the Equal Protection Clause, the claim be DENIED; and

4)  Judgment be ENTERED for the Respondent; and

5)  The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

and filed within fourteen (14) days (plus three (3) days if
served by mail) after service of the objections.  The Court will
then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
636 (b)(1)(C).  The parties are advised that failure to file
objections within the specified time may waive the right to
appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d
1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:     March 22, 2011**               **/s/ Sandra M. Snyder**
                                UNITED STATES MAGISTRATE JUDGE